sand for lumber upon the testimony stated. He found for the defendants in the sum of about $5, and charged the plaintiff with the costs of the action. If the conclusion which I have indicated be right, this judgment was erroneous, and should be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed on law and facts, referee discharged, and new trial granted, with costs to appellant to abide event. All concur.

---

### BALCH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1909.)

RAILROADS (§ 350*) — COLLISIONS AT CROSSINGS — NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a team and vehicle in a collision with a train at a crossing, evidence *held* to require submission to the jury of the issue of the negligence of the flagman in not signaling the train to stop in time or of the engineer in not.heeding the signal.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.*]

McLennan, P. J., and Robson, J., dissenting.

Appeal from Trial Term, Oneida County.

Action by Orville Balch against the New York Central & Hudson River Railroad Company. From a judgment of dismissal, plaintiff appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles H. Searle, for appellant.

Thomas D. Watkins, for respondent.

KRUSE, J. A moving freight train on the defendant's railroad collided with the plaintiff's team at a street crossing in the city of Utica, killing the horses and demolishing the wagon. The plaintiff seeks to recover damages therefor, claiming that the casualty was the result of the defendant's negligence. At the close of the plaintiff's evidence, the defendant's motion for a nonsuit was granted, and the exception thereto presents the only question upon this appeal.

The accident occurred on November 11, 1901, early in the evening, but after dark. It had rained in the afternoon, and was cold. The rain had frozen, and the streets were very slippery. The accident occurred where the railroad crosses Webster avenue. The horses and all of the wagon except the hind wheels had gotten over the track, when one of the horses slipped and fell on the icy pavement. The driver succeeded in getting the horse up; but it fell again, and at one time both of the horses were down. He tried to draw the kingbolt and detach the team from the wagon, but was unsuccessful. He was thus engaged in attempting to extricate himself from his perilous situation for about 10 minutes, when the freight train came along and the collision occurred, with the result stated. There was a flagman's shanty 140 feet east of the place where the accident oc-

curred. The evidence tended to show that the flagman guarded the crossing in question, as well as others. The East Utica station is about 575 feet west from the place of accident. The flagman evidently saw the danger of the horses, and went up to the place of accident, presumably to render assistance. He then ran back to the shanty after his lantern. The freight train was approaching from the west. He swung his lantern, manifestly for the purpose of stopping the train; but it did not stop in time to avoid the collision.

The train seems to have been discovered when the flagman went back for his lantern. It was then at Howard avenue, 14 blocks to the west. Just when it was that the flagman commenced swinging his lantern is not very clear; but the inference is permissible that it was not done until he was nearly back to the scene of the accident. The driver testified that he then heard the flagman holler to "Look out! the train is coming," and another witness testified that the flagman hollered, "Get out of the way! she is going through," and that was when the train was at the station. The headlight of the engine was lighted; but there is no evidence as to how far the engineer could see ahead of his train with the aid of this light, nor did any one testify as to the precise rate of speed at which the train was going. It is stated that the train was going fast. It appeared, however, that this train had been within the city limits for about the distance of 2 miles before the collision occurred, and there is an ordinance of the city of Utica limiting the rate of speed of trains within the city limits to 8 miles an hour. We may therefore assume, in the absence of any evidence to the contrary, that the speed of the train did not exceed that rate. It also appears that there was a semaphore between the station and the place of accident, about 500 feet east of the station and about 75 feet west of the place of accident. The semaphore was set against the train. It whistled for the semaphore when it was about 1,200 or 1,400 feet west thereof, and thereupon the station agent set the semaphore so as to permit it to go through.

The train consisted of about 30 cars, each car being about 40 feet long, except the engine and tender, which were together about 50 feet long. An engineer testified that on that grade, with a slippery track, a train of 30 to 33 cars, if running fast, could be stopped in between 1,500 and 2,000 feet; and if running at 8 miles an hour, in running its length, or from 1,250 to 1,400 feet. We may therefore assume that the engineer on the freight train could have stopped his train before reaching the semaphore, after he had whistled. Going at the rate of 8 miles an hour, it would take about two minutes for the train to run from where the whistle was blown, to the semaphore station. So that if the flagman had signaled two minutes before the collision occurred, and the engineer had seen the signal, the train could have been stopped and the collision prevented. That the engineer could have seen the signal, if he had been looking, seems clear. The track was straight for several miles, and the train was observed while still 14 blocks away. It is possible that the flagman supposed that the train would stop at the station, and, if so, it may have been a mere error of judgment on his part; but that, I think, would be a question of fact.

I think the jury could have found from the evidence that either the flagman was negligent in not waiving his lantern in time to stop the train, or else that the engineer was heedless of the signals given him, and neglected to bring his train to a stop in time to avoid the collision. The defendant saw fit not to call the engineer or flagman, or give any evidence. It challenged the sufficiency of the evidence, as it had the right to do, after the plaintiff had rested. While the evidence is not very satisfactory, we think it sufficient to take the case to the jury, in the absence of any evidence to the contrary.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, P. J., and ROBSON, J., who dissent on the ground that plaintiff failed to establish defendant's actionable negligence.